**SO ORDERED.**

**SIGNED this 19 day of July, 2006.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **TRANSCOMMUNICATIONS** | ) | **No. 03-18744** |
| **INCORPORATED** | ) | **Chapter 7** |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **RICHARD P. JAHN, JR., TRUSTEE** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v | ) | **Adversary Proceeding** |
| | ) | **No. 05-1230** |
| **U.S. XPRESS, INC.** | ) | |
| | ) | |
| Defendant | ) | |

### <u>MEMORANDUM</u>

This is a proceeding brought by the trustee against the defendant to recover alleged set-offs pursuant to the provisions of 11 U.S.C. § 553(b). The proceeding is before the court on cross motions for summary judgment filed by the parties.

The basic facts are relatively simply. The debtor, Transcommunications Incorporated, furnished telephone communication services to Xpress and over-billed Xpress for these services. When Xpress discovered the error, the parties entered into a pre-petition letter agreement in which they agreed that Xpress could "recoup any overpayments for communications transactions from future communications transactions until such overpayments are recouped in full." As of October 1, 2003, the 90th day prior to the filing of the petition in this case, Xpress had allegedly recouped over $150,000.00 and was still owed $234,805.77, which it allegedly recouped entirely within the 90 days next preceding the filing of the petition in this case. The trustee has sued Xpress under 11 U.S.C. § 553(b) to recover the $ 234,805.77 that Xpress allegedly recouped in the 90 days before bankruptcy, contending it was a setoff. Xpress answered, maintaining that it had recouped rather than set off the funds in question. Both parties now seek summary judgment in their favor.

Rule 56, Fed. R. Civ. P., as incorporated in Fed. R. Bankr. P. 7056, requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views the facts and any inferences that can be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

-2-

The trustee first argues that he is entitled to summary judgment because recoupments ought not to be recognized in bankruptcy, at least not in the Sixth Circuit. For authority he relies on a proposed extension of the reasoning found in *XL/Datacomp, Inc. v. Wilson*, (*In re Omegas Group, Inc.*), 16 F.3d 1443 (6th Cir. 1994), in which the court disapproved the imposition of a constructive trust on the debtor's property by the bankruptcy court as a remedy for the debtor's fraud. The court held that constructive trusts were designed to prevent unjust enrichment, *id.* at 1453 n.9, and that, at least in bankruptcy, the remedy failed in its purpose because the constructive trust attached to property of the estate, not the debtor's post-petition property. Thus it failed to punish the debtor, who was losing his property anyway, and succeeded only in frustrating competing creditors who lost a portion of the estate because they, unlike the beneficiary of the constructive trust, could obtain no similar trust from the bankruptcy court. "To permit a creditor, no matter how badly he was 'had' by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent completely the Code's equitable system of distribution." *Id.* at 1443. Because constructive trusts of the kind condemned in *Omegas* are generally viewed as equitable remedies, the trustee argues that *Omegas* should be extended to prohibit all recoupments in bankruptcy, since they too are creatures of equity.

*Omegas*, however, did not condemn the use or recognition of any equitable principle in bankruptcy. Indeed the Sixth Circuit has held that bankruptcy courts may recognize a constructive trust when applicable state law imposes the constructive trust prior to the filing of the debtor's petition in bankruptcy, *Poss v. Morris (In re Morris)*, 260 F.3d 654 (6th Cir. 2001), or when the bankruptcy policy of ratable distribution among creditors is not implicated. *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996). The Bankruptcy Appellate Panel for

the Sixth Circuit has refused to extend *Omegas* so as to bar an attorney's charging lien for his fees. *Corzin v. Decker, Vonau, Sybert & Lackey, Co. (In re Sims Const. Serv. Co.)*, 311 B.R. 479, 488 (B.A.P. 6th Cir. 2004). The Bankruptcy Appellate Panel held that "*Omegas* should not be read to invariably preclude the enforcement of constructive trusts or, for that matter, equitable liens *or other types of equitable relief.*" *Id.* at 488 (emphasis added).

The great weight of authority recognizes recoupment as a defense in bankruptcy. *United States Abatement Corp. v. Mobile Exploration & Producing U.S., Inc. (In re United States Abatement Corp.)*, 79 F.3d 393 (5th Cir. 1996); *Ashland Petroleum Co. v. Appel (In re B&L Oil Co.)*, 782 F.2d 155 (10th Cir. 1986). Even the Supreme Court views recoupment as a defense that merely permits "a transaction which is made the subject of suit by plaintiff to be examined in all its aspects, and justice to be rendered that does justice in view of the one transaction as a whole." *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299 (1946) (quoted with approval in *United States v. Dalm*, 494 U.S. 596, 611 (1990)).

What the trustee's argument fails to consider is that the recoupment which occurred in this case was not an equitable *defense* at all. It was an accounting adjustment arising out of a prepetition contract. For these reasons, the court declines the trustee's invitation to extend *Omegas* so as to destroy the vehicle of recoupment as used in this case. Recoupment is best viewed as a precision tool for determining the true amount of a specific claim and not as some overbroad equitable remedy being used by bankruptcy courts in contravention of the Bankruptcy Code's principle of ratable distribution, the situation condemned in *Omegas*.

The primary question in this proceeding is whether the relevant prepetition transactions were setoffs or recoupment. The trustee has sued the defendant under § 553 to recover a setoff, but the defendant contends that what occurred was a recoupment and not a setoff at all. The distinction between setoff and recoupment is amply explained in 5 *Collier on Bankruptcy* ¶ 553.10 (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 2006) ("*Collier*"):

> The main distinction between the doctrines of setoff and recoupment is that setoff is a form of cross-action that depends in its application upon the existence of two separate, mutual obligations. Absent of right of setoff, each obligation would be independently enforceable. Moreover, rights of setoff most often arise between obligations stemming from separate transactions or events, although setoff is certainly permissible with respect to mutual, prepetition obligations arising out of the same transaction.
>
> In contrast, recoupment is in the nature of a right to reduce the amount of a claim, and does not involve establishing the existence of independent obligations. By definition, recoupment may arise only out of the "same transaction" or occurrence that gives rise to the liability sought to be reduced.

Both parties to this lawsuit admit that the prepetition letter agreement of October 2, 2003, permitted the defendant to recoup communications overbillings it suffered by treating future invoices from the debtor for communications transactions as paid rather than having to pay them. From the affidavits submitted, the parties do not agree that the entire sum of $ 234,805.77 was properly recouped according to the agreement because, in the trustee's view, some of the invoices that went unpaid to effect  recoupment were not invoices to Xpress for communications transactions. For example, the affidavit of Lisa Pate on behalf of Xpress avers that Xpress "had fully recouped the over-billing pursuant to the Master Agreement by recouping overpayments for communications transactions against charges for subsequent communications transactions." However, the affidavit of William Jensen, filed in support of the trustee, avers that the telephone services in question were not furnished pursuant to the Master Agreement of August 30, 2002,

and that Xpress accomplished its recoupment by offsetting some charges that were unrelated to telecommunication services, for example, a sky box at the University of Tennessee's stadium in Knoxville.[1] Moreover, Jensen's affidavit also raises questions of fact about whether certain "recoupments" were really recoupments arising out of the same transaction ("communications transactions" in the words of the letter agreement) or were instead just setoffs not arising from communications transactions and therefore possibly recoverable by the trustee. Paragraph 13 of the Jensen affidavit raises questions about the propriety of the recoupments for "contract labor," "recharge," "credit for sky box," and "wires." If these were not for communications transactions, then they may be ordinary setoffs recoverable by the trustee. If they were true recoupments arising out of "communications transactions," they would not be recoverable under § 553. For these reasons, summary judgment is inappropriate at this time.

During the course of briefing the motions for summary judgment, the trustee raised an argument that the defendant should be precluded from asserting a recoupment defense because of unclean hands. That argument, however, is misplaced in the context of this proceeding.[2] The trustee's lawsuit has to do with whether the trustee can recover certain alleged setoffs and more particularly whether certain transactions were setoffs or recoupments. This proceeding is not an

---

[1] The defendant filed a motion to strike the affidavit of William Jensen, arguing that it is not based on personal knowledge, that Jensen is not competent, and that the affidavit contains parole evidence. Jensen was a controller employed by the debtor. He avers that he is familiar with some of the agreements among the parties and that some of the invoices recouped were related to communications while some were not. The court considers Jensen's affidavit competent as far as it goes. Nor is it objectionable for containing parole evidence. Jensen maintains that the contract for 1-800 numbers was a verbal agreement not contained in the "Master Agreement." He does not purport to contradict the Master Agreement, but to set up another one. For these reasons, defendant's motion to strike Jensen's affidavit will be denied.

[2] The defendant filed a motion to strike the affidavit of the trustee insofar as it addressed the unclean hands doctrine. The motion shall be deemed moot in light of the court's rejection of the trustee's argument that the unclean hands doctrine is applicable in this proceeding.

action in which the defendant is raising recoupment as an equitable defense. Assuming that all the transactions were recoupments, and even assuming the interlocking directors had unclean hands, the fact that the recoupments all occurred prepetition and apparently pursuant to a written agreement differentiates this case from the usual case in which recoupment is pled as a defense. There the unclean hands of the defendant might bar the recoupment defense, which is equitable in nature. Here the recoupments occurred prepetition and the question is whether the trustee can undo them. At this point there appears to be no legal vehicle by which the trustee can accomplish this purpose.

In summary, the trustee has sued to recover setoffs.  He will be entitled to recover to the extent that he can prove invoice by invoice that setoffs, rather than recoupments, occurred. The court is unable to determine from the present record whether the invoices arose out of communications transactions or some other transaction. For these reasons, both motions for summary judgment will be denied.

An order will enter in accordance with this memorandum.

###