**SO ORDERED.**

**SIGNED this 04 day of December, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRANSCOMMUNICATIONS | ) | No. 03-18744 |
| INCORPORATED, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| RICHARD P. JAHN, JR., TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 05-1230 |
| U.S. XPRESS, INC. | ) | |
| | ) | |
| Defendant | ) | |

**M E M O R A N D U M**

This is a proceeding brought by the trustee against the defendant to recover alleged

setoffs pursuant to the provisions of 11 U.S.C. § 553. Having considered both the evidence

produced at trial and the arguments of counsel, the court now makes its findings of fact and conclusions of law pursuant to the provisions of Bankruptcy Rule 7052.

I.

The debtor, Transcommunications Incorporated, was engaged in the business of supplying communication services of various kinds to U.S. Xpress Enterprises, Inc. ("U.S. Xpress"). Most of these services were provided under a master agreement, but the debtor also provided an additional service not covered by the master agreement that involved selling U.S. Xpress long distance telephone minutes for various 800 numbers it made available for use by the debtor. Due to the debtor's error in computing the sale price of these minutes, the debtor overcharged U.S. Xpress with respect to these 800 numbers. These overcharges occurred from July 2002 to June 2003 and amounted to $389,106.65. When the 800 number overcharge was discovered, the parties agreed by letter of October 2, 2003, that U.S. Xpress could recoup the overcharge it had already paid in full by withholding payments for "future communications transactions" until the overcharge was eliminated. Thus, the debtor continued to provide services to U.S. Xpress, but these went unpaid until the entire amount of $389,106.65 was recovered by U.S. Xpress. Of this amount, $234,803.84 was recovered by U.S. Xpress within the 90 days before the filing of the debtor's bankruptcy petition.

The trustee contends that every dollar recovered by U.S.Xpress was a setoff under 11 U.S.C. § 553 and that the recoveries that occurred during the 90 days immediately preceding the petition filing date are recoverable by him pursuant to § 553(b). U.S. Xpress, on the other hand, contends that all the recoveries should be legally characterized, not as setoffs, but as recoup-

2

ments and that, to the extent that the recoveries within the 90-day reach back period of § 553(b) are recoupments, they cannot be recovered by the trustee under the provisions of § 553. Hence, the main issue presented in this proceeding is whether various sums recovered within the reach back period were recoupments or setoffs.

## II.

The Bankruptcy Code permits "a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). It then permits a trustee to recover such setoffs of mutual debts effected within 90 days of the petition filing date, to the extent that the setoff enabled the creditor to improve its position. 11 U.S.C. § 553(b). All the recoveries by U.S. Xpress that occurred within the 90 days prior to the petition date would be setoffs under the facts of this case unless they are something else, namely, recoupments.

A recoupment is close kin to a setoff, the difference being that a setoff cancels mutual debts owed between the parties whereas recoupment cancels only such mutual debts as arise out of the same transaction. Recoupment is not defined in the Bankruptcy Code, nor does the recoupment doctrine, as applied in the bankruptcy courts, derive from any part of the Code. Rather, its origin is in the common law, and it is held that "[t]he sole requirement governing the applicability of the recoupment doctrine is that the sum of the amount to be reduced must have arisen out of the 'same transaction' as the original sum." *Reeves v. Columbia Gas (In re Reeves)*, 265 B.R. 766, 770 (Bankr. N.D. Ohio 2001); *accord*, *Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 314

(M.D. Tenn. 1981); *Paris v. Transamerica Ins. Group (In re Buckley & Assocs. Ins., Inc.)*, 67 B.R. 331, 334 (Bankr. E.D. Tenn. 1986).

The dispute between the trustee and U.S. Xpress in this proceeding revolves around the meaning of the phrase "same transaction." U.S. Xpress contends that *all* the recoveries by U.S. Xpress arose out of the same transaction, that is, the provision of communication services by the debtor to U.S. Xpress.[1] It argues that any recovery allocable to any "communications transaction," however broadly construed, between it and the debtor is a recoupment and thus beyond the reach of the trustee. The trustee takes the opposite view, that *none* of the recoveries arose out of a "same transaction" between the debtor and U.S. Xpress and that, therefore, all are recoverable by him. The arguments of both parties overreach somewhat in the court's view.

The $234,803.84 recovered during the reach back period is allocable to the following charges, which went unpaid to effect the recovery:

| | | |
|---|---|---|
| 1. | $148,081.24 | 800 number services |
| 2. | $     354.98 | Cell phones |
| 3. | $  67,406.86 | Telephone card time provided to U.S. Xpress drivers |
| 4. | $    5,165.29 | Additional phone card time provided to U.S. Xpress drivers |
| 5. | $    5,192.48 | T-1 communication lines for voice or high speed data |
| 6. | $    8,602.99 | Fees for certain technicians or programmers loaned to U.S. Xpress by the debtor. |

---

[1] U.S.Xpress concedes that the $8,602.99 recovered by its nonpayment for contract labor loaned to it by the debtor has nothing to do with communication services and concedes that it must have been a setoff.

The modern status of the "same transaction" rule is ably given by Judge Hardin in *Delta Air Lines, Inc. v. Bibb (In re Delta Air Lines)*, No. 06-1259A, 2006 WL 3200850 (Bankr. S.D.N.Y. Nov. 3, 2006), and will not be recapitulated here. Essentially, one line of cases considers obligations to arise from the same transaction where they bear a logical relationship to each other. The second approach is somewhat more restrictive, requiring a "single integrated transaction." Under either definition of "same transaction," however, the court believes that the $148,081.24 recovered by U.S. Xpress was a proper recoupment because the circumstances that gave rise to both the overcharge and the necessity of correcting it arose from "a set of reciprocal contractual obligations or from the same set of facts." *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 134 (2d Cir. 1998). In this case, there was a contract between the parties respecting the use of, and compensation for, the 800 lines, and the parties had reciprocal obligations arising from it. The overcharge and the obligation to repay it, therefore, arose from the "same transaction," that is, the contract between them.

The parties agree that there is no *written* contract that governs the furnishing and use of the 800 numbers, yet the circumstances of this case indicate an implied contract between the parties for the furnishing and use of multiple 800 numbers. Implied contracts are those that arise by implication of law or fact. Contracts implied in fact arise from the circumstances surrounding a transaction and the course of dealing between the parties such that it is proper to infer that they had a contract. *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 153-54 (Tenn. 1966) ("Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract. Such an agreement may result as a legal inference from the facts and circumstances of the case."); *Thompson v. Hensley*,

5

136 S.W.3d 925, 930 (Tenn. Ct. App. 2004) ("In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract."). The course of dealing between the parties in this case is such that the debtor furnished 800 numbers to U.S. Xpress and held them available for use from month to month – indeed for years. In turn, U.S. Xpress regularly paid for its usage. There was a predetermined price and an agreement about that price for, had there been no agreement about the price of the lines, the debtor could have charged whatever it wished and an "overcharge" would have been technically impossible. Thus, a preponderance of the evidence in this proceeding establishes an implied contract between the parties for the furnishing of 800 numbers by the debtor and a corresponding payment therefor by U.S. Xpress. The fact that the 800 number services were billed and paid for monthly does not disestablish an implied contract. Rather, it fits the idea of an overall agreement between the parties to furnish and pay for these services at an agreed rate for a considerable period of time.

As the Bankruptcy Appellate Panel of the Ninth Circuit has put it, "commercial contracts are appropriate for recoupment when there are ongoing transactions and obligations arising under the same contract." *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 758 (B.A.P. 9th Cir. 2001). Indeed, "[i]n bankruptcy, the recoupment doctrine has been applied primarily to the situation where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract." *Reeves*, 265 B.R. at 770. In *Reeves*, the court went on to say:

> The key question is whether the claim to be reduced was specifically received in exchange for the claim constituting the defendant's demand against the plaintiff.

6

> Stated differently, if at the time the parties entered into a contract, it was intended that performance of the obligations which now give rise to the opposing claims were dependent on each other, then equity holds that such claims should be deemed to have arisen from a single integrated transaction.

*Id.* at 271; *accord*, *Malinowski*, 156 F.3d at 134 (noting that a credit and an obligation arising "from a set of reciprocal contractual obligations or from the same set of facts" are part of the same transaction).

Indeed, the classic case for recoupment under a contract is the case of an overpayment under the contract. In *Waldschmidt v. CBS, Inc.*, CBS had made advances to the debtor, a singer, which it wished to recoup against royalties it owed the singer. The district court permitted CBS to recoup its advances, concluding that "the advances and royalties involved in this case unquestionably arise from the same transaction. Both grow out of the recording contract between Mr. Jones and CBS." *Waldschmidt*, 14 B.R. at 314. The case at bar, like *Waldschmidt*, involves overpayment arising under a single contract or agreement, and recoupment should be permitted for the same reasons as in *Waldschmidt*.

It also appears that state courts in Tennessee would permit recoupment under the facts of this case. In *Nashboro Records v. Pickwick International, Inc.*, No. 85-265-II, 1986 WL 5324 (Tenn. Ct. App. May 9, 1986), the Tennessee Court of Appeals permitted recoupment under an implied contract by Pickwick against Nashboro for merchandise it had the right to return under the implied contract. Although there was no written contract between the parties, the appellate court affirmed the trial court's decision, which it described as follows:

7

> The trial court determined from the testimony that the conduct of the parties in the course of performance indicated an agreement whereby Nashboro would sell records and tapes to Pickwick, and Pickwick could return the unsold portion of the merchandise, and Nashboro would accept the return and determine the amount of the credit to be given on the account. The trial court found Pickwick was entitled to return certain merchandise to Nashboro, and the court ultimately determined that the credit should be in the amount of $11,404.82, which the record shows as the amount determined by Nashboro upon receiving the returned shipment and processing the merchandise, all according to the prior conduct and course of performance of the parties.

*Id.* at *6.

Based on the foregoing authorities, this court finds that the debtor and U.S. Xpress had an implied agreement under which the debtor furnished 800 numbers to U.S. Xpress, which in turn paid an agreed price for the privilege of using them. It further finds that the overcharge in this case was an overcharge by the debtor for the use of its 800 number services and that the recovery of $148, 081.24 by U.S. Xpress was a recoupment of part of the overcharge it had paid. Both the overcharge and the credits used to reduce it arose from the same transaction, namely, the implied contract to provide 800 number services.

### III.

Of the $234,803.84 recovered by U.S. Xpress during the 90-day reach back period of § 553(b), the court has found that $148,081.24, allocable to 800 line invoices from the debtor to U.S. Xpress that went unpaid, was properly recouped by U.S. Xpress and was not set off within the meaning of that term as used in § 553. The remainder of the monies recovered by U.S. Xpress during the 90-day reach back period, however, were setoffs, because they were attributable to invoices for charges not arising out of the parties' agreement concerning the 800 number

8

services. The provision of cell phones, various telephone charge cards and related services, T-1 lines, and contract labor had nothing to do with the agreement for 800 number services and thus constitute setoffs recoverable by the trustee under § 553(b). Accordingly, the court will give judgment the trustee in the sum of $86,722.60.[2]

## IV.

Prior to the trial of this case, the trustee moved to amend his complaint as to allege that the letter agreement of October 2, 2003, was an avoidable preferential transfer of rights by the debtor. The motion will be overruled in that respect because it is now moot, the court considering that the letter agreement is irrelevant to this case. The agreed "recoupment" was either a setoff or a recoupment under the Bankruptcy Code, and the parties' agreement to undertake it has no effect on the outcome of this case. The trustee also moved to amend his complaint to allege, under § 553(a)(3), that he could recover all the monies recovered by U.S. Xpress during the 90-day reach back period because U.S. Xpress incurred debts to the debtor for the purpose of obtaining a right of setoff against the debtor. This amendment is granted, but there is no evidence whatsoever in the record that U.S. Xpress became indebted in any way to the debtor for the purpose of obtaining a setoff right. Instead, all the proof shows that its indebtedness to the debtor is the result of a long standing contractual relationship between the two parties under which communication services of various kinds were provided by the debtor to U.S. Xpress. U.S. Xpress

---

[2] The court summarily rejects the other arguments set forth in the defendant's trial brief as being without merit.

had no improper purpose in incurring these debts, and instead had perfectly legitimate business reasons for doing so.

### V.

For the foregoing reasons, the court finds that the defendant, U.S. Xpress Enterprises, Inc., may retain its recoupment of $148,081.24. The trustee is entitled to recover the sum of $86,722.60, which was offset by the defendant within 90 days of the filing of the bankruptcy petition and was not recoupment. An appropriate order will issue.

###